**William PATTON, by his next friends, Dr. Hylan Lewis and Mrs. Florence Logan, Plaintiff,**

v.

**James DUMPSON, Individually and as Administrator of the New York City Human Resources Administration, and as Commissioner of the New York City Department of Social Services; Carol Parry, Individually and as Assistant Administrator of Special Services For Children; Elizabeth Beine, Individually and as Director of the Bureau of Child Welfare; Adolin Dall, Individually and as Director of the Division of Inter-Agency Relationships of Special Services for Children; Sister Marian Cecilia Schneider, Individually and as Administrator of New York Foundling Hospital; Victor Remer, Individually and as Executive Director of Children's Aid Society; Bernard Shapiro, Individually and as Executive Director of the New York State Board of Social Welfare; Stephen Berger, Individually and as Commissioner of the New York State Department of Social Services, Defendants.**

No. 75 Civ. 4922.

United States District Court,
S. D. New York.

Jan. 23, 1980.

Marcia Robinson Lowry, Children's Rights Project, New York Civil Liberties Union, New York City, Steven R. Shapiro, New York City, of counsel, for plaintiff.

Allen G. Schwartz, Corp. Counsel, New York City, for municipal defendants Dumpson, Parry, Beine and Dall; Judith A. Levitt, Asst. Corp. Counsel, New York City, of counsel.

Webster & Sheffield, New York City, for defendant Victor Remer; Donald J. Cohn and Peter D. Kazaras, New York City, of counsel.

## OPINION

OWEN, District Judge.

Two legal issues of first impression have been briefed by the parties to this action in the context of a court initiated motion to dismiss for failure to state a claim.[1] These questions pertain to the viability of plaintiff's cause of action for damages under § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("§ 504"). That statute prohibits discrimination against handicapped individuals in federally funded programs. Two issues are raised in this case: first, whether a private right of action for damages may be implied under § 504; and second, whether the doctrine of *respondeat superior* applies to such actions. Plaintiff concedes that both questions must be answered in the affirmative for the § 504 claim to survive a motion to dismiss.

The background of this case is as follows. Plaintiff William Patton is a handicapped child who became the legal responsibility of certain public and private child welfare agencies after he was abandoned by his mother in January 1969.[2] This suit was brought on his behalf against the executive heads of those agencies in their individual and official capacities,[3] on the

---

1. The court directed the parties to brief these issues at a pretrial conference on September 22, 1979. At that time, the parties agreed that the action would have to be dismissed if the questions raised were not resolved in plaintiff's favor. Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to initiate a motion to dismiss a complaint without a formal motion from defendants. 5 Wright & Miller, *Federal Practice and Procedure*, § 1357, at 593 (1969).

2. Pursuant to New York Social Services Law § 395, *et seq.*, William came under the care of New York City officials responsible for abandoned children. These City officials (James Dumpson and Carol Parry) placed William with the Children's Aid Society, which in turn placed him as a boarder with the New York Foundling Hospital.

3. Two state agency officials are also named in the complaint. However, they are not proper parties to this suit. A claim for monetary relief against state agencies or officials under § 504

grounds that they failed to provide him with adequate and appropriate care.[4] The original complaint, dated October 6, 1975, set forth twelve causes of action, all but one of which were dismissed by this court on January 3, 1977.[5] The remaining cause of action was a claim under 42 U.S.C. § 1983 alleging that plaintiff was denied an education while under the defendants' care.

The complaint was subsequently amended to add a cause of action under § 504 of the Rehabilitation Act based on allegations that plaintiff was denied an education solely because he suffered from certain physical and mental handicaps.[6] At a pretrial conference on September 22, 1978, plaintiff's counsel conceded that it would be unable to adduce sufficient evidence of defendants' personal responsibility for the injury alleged to prevail on the § 1983 claim.[7] Thus, by plaintiff's own admission, this case stands or falls on the § 504 cause of action.

Section 504 of the Rehabilitation Act of 1973 provides in pertinent part:

> No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by

reason of his handicap, be excluded from the participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance  . . . .

29 U.S.C. § 794.[8] Under this statute, the plaintiff, a handicapped child, is seeking to hold public and private agencies liable in damages for discriminating against him because of his handicap.[9] The complaint alleges that, due to plaintiff's physical and mental handicaps, agency employees denied him the benefit of educational services. The jurisdictional basis for such a claim under § 504 has not yet been conclusively established. At this juncture, therefore, plaintiff must show that a private right of action for damages may be implied from § 504's general proscription. In addition, he must demonstrate that the agencies may be held vicariously liable for the acts of their staff members under the doctrine of *respondeat superior*.

■ A private right of action under § 504 has been recognized in suits for injunctive relief by every federal court to consider the issue, including the Second Circuit.[10] In

---

**4.** For a complete statement of the facts underlying this action, see *Patton v. Dumpson*, 425 F.Supp. 621 (S.D.N.Y.1977).

**5.** Plaintiff was given leave to amend the causes of action alleging racial discrimination but has failed to do so. Consequently, dismissal of those claims is now final.

**6.** The motion to amend the complaint to add the § 504 claim was granted "upon the representation of plaintiff's counsel that no additional factual development or presentation of any kind is involved or needed." *Patton v. Dumpson*, No. 75–4922 (S.D.N.Y. Feb. 1, 1978) (order granting leave to amend the complaint).

**7.** Plaintiff had moved on December 6, 1977 to amend the complaint to name specifically several caseworkers and casework supervisors who were directly involved in caring for William. This motion was denied as untimely. *Patton v. Dumpson*, No. 75–4922 (S.D.N.Y. Feb. 1, 1978) (order denying motion to add parties).

would be barred by the 11th Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). In any event, the § 504 claim is not directed at the state agencies.

**8.** "Section 504 was patterned after, and is almost identical to, the anti-discrimination language of section 601 of the Civil Rights Act of 1964, 42 U.S.C. 2000d 1 (relating to race, color, or national origin), and section 901 of the Education Amendments of 1972, 42 U.S.C. 1683 (relating to sex)." Sen.Rep.No. 93 1297, 93rd Cong., 2d Sess. 4, *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6373, 6390 -91.

**9.** The action was originally brought for injunctive as well as monetary relief, but the former is no longer needed. William is now in a suitable school program and is not in foster care.

**10.** *See, e. g., Lloyd v. Regional Transportation Authority*, 548 F.2d 1277 (7th Cir. 1977); *Kampmeier v. Nyquist*, 533 F.2d 296, 299 (2d Cir. 1977); *Leary v. Crapsey*, 566 F.2d 863, 865 (2d Cir. 1977); *Whitaker v. Board of Higher Education*, 461 F.Supp. 99 (E.D.N.Y.1978); *United Handicapped Federation v. Andre*, 558 F.2d 413 (8th Cir. 1977); *Davis v. Southeastern Community College*, 574 F.2d 1158 (4th Cir. 1978), *rev'd on other grounds*, 442 U.S. 397, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979); *Barnes v. Converse College*, 436 F.Supp. 635, 638 (D.S.C. 1977); *Hairston v. Drosick*, 423 F.Supp. 180 (S.D.W.Va.1976).

addition, the Supreme Court has inferred a private right of action under § 901 of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX") which prohibits discrimination on the basis of sex in federally funded programs. *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). All of the factors that lead the Supreme Court to imply a cause of action under Title IX are present here. *See Cannon, supra*, at 1953–64, *applying the test of Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). First, the language of the statute is expressly right-creating in favor of a special class of persons. *See Cannon, Id.* at 1954, n. 13. Second, it is clear that Congress intended for § 504 to be interpreted and applied as Title IX and Title VI have been. *See* n. 8 *supra*. These statutes are closely and consciously aligned in language and purpose. In addition, Congress authorized their utilization of the same enforcement procedures. *Cannon, supra* at 1957 n. 19; 45 C.F.R. 84.6 (§ 504), *incorporating by reference*, 45 C.F.R. 80.6–80.10 (Title VI). Thus, it would be inconsistent not to recognize a private right of action under § 504 when one has been implied under Title IX.[11]

In this action, plaintiff is seeking only money damages in mitigation of past discrimination. Defendants contend that this distinguishes it from the line of cases recognizing a private right of action under § 504. *See* n. 10 *supra*. Those cases were all suits for injunctive relief to remedy present or ongoing discriminatory conduct. Defendants argue that while injunctive suits may

be consistent with the purpose of the Rehabilitation Act, damage actions are not.

This distinction between monetary and injunctive relief is relevant, according to defendants, because the overall purpose of the Act is remedial not punitive. Section 504 is only one portion of a comprehensive act which provides for federal funding of rehabilitation and vocational training programs and facilities for handicapped individuals. In this context, § 504 was intended to ensure that handicapped persons receive the full benefit of all federally funded programs. Accordingly, defendants argue that injunctive suits do not conflict with this purpose because they merely force an agency to comply with the Act. By contrast, they assert, damage actions may result in large damage awards funded by the federal government. This could result in the bankruptcy of an agency or program for a single violation, thereby depriving other handicapped individuals of important services.

■ There is, however, no precedent for limiting a private right of action under § 504 to suits for injunctive relief in the absence of a Congressional directive to that effect. In the first place, the right to seek money damages for civil rights violations is an accepted feature of the American judicial system. The trend began with *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (right to sue for money damages for unconstitutional search under 42 U.S.C. § 1983), and has been extended to virtually every other statute designed to protect against unlawful discrimination.[12]

---

11. While the Supreme Court in *Cannon* did not expressly decide the question of whether a private right of action could be implied under Title VI, even the dissent recognized that it would be difficult not to do so once private suits under Title IX were permitted. *Cannon*, 99 S.Ct. at 1969 (White, J., dissenting).

12. See *Runyon v. McCrary*, 427 U.S. 160, 180, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976) (suit for money damages under 42 U.S.C. § 1981 prohibiting discrimination in the making of contracts recognized, but barred by statute of limitations); *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238–40, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (petitioners entitled to compensatory

damages under 42 U.S.C. § 1982 which prohibits discrimination in property transactions); *Gilliam v. City of Omaha*, 388 F.Supp. 842, 847 (D.Neb.), *aff'd*, 524 F.2d 1013 (8th Cir. 1975) (allowing a suit for money damages under Title VI); *Albermarle Paper Co. v. Moody*, 422 U.S. 405, 417–25, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (discussing compensatory awards under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, which prohibits discrimination in employment); *Williams v. Matthews Co.*, 499 F.2d 819, 829 (8th Cir.), *cert. denied*, 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294 and 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974) (awarding actual and punitive damages under Title VIII of the 1968 Fair Housing Act, 42 U.S.C. § 3612,

In addition, damages are now recoverable in direct actions under the first,[13] fourth,[14] fifth,[15] sixth,[16] eighth,[17] and ninth[18] amendments.

There is no support in these cases for defendants' position that the underlying right to sue should be limited by the relief sought. Instead, they follow the well-established principal that "the existence of a statutory right implies the existence of *all* necessary and appropriate remedies." *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400, 405, 24 L.Ed.2d 386 (1969). Thus, in *Bivens v. Six Unknown Named Agents*, Justice Harlan observed that

> [I]f a general grant of jurisdiction to the federal courts by Congress is thought adequate to empower a federal court to grant equitable relief for all areas of subject-matter jurisdiction enumerated therein, see 28 U.S.C. § 1331(a), then it seems to me that the same statute is sufficient to empower a federal court to grant a traditional remedy at law. Of course, the special historical traditions governing the federal equity system, see *Sprague v. Ticonic National Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939), might still bear on the comparative appropriateness of granting equitable relief as opposed to money damages. That possibility, however, relates, not to whether the federal courts have the power to afford one type of remedy as opposed to the other, but rather to the criteria which should govern the exercise of our power.

403 U.S. 388, 405–6, 91 S.Ct. 1999, 2009, 29 L.Ed.2d 619 (Harlan, J., concurring) (footnote omitted).[19]

The history of implied rights of action under statutes other than § 504 does not reveal a judicial preference for equitable as opposed to legal remedies. The first case in which the Supreme Court inferred a private right of action was a suit for money damages under the 1893 railroad legislation, *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916). In that case the Court stated:

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied . . ."

*Id.* at 39–40, 36 S.Ct. at 484. More recently, the Supreme Court recognized a private right of action under Title IX where the plaintiff sought both injunctive and monetary relief. *Cannon, supra.* In *Cannon*, the Supreme Court reversed the District Court's finding that the sole remedy available to the plaintiff was a cut-off of federal funds to the offending agency. *Cannon v. University of Chicago*, 406 F.Supp. 1257, 1259 (N.D.Ill.1976), aff'd, 559 F.2d 1063 (7th Cir. 1976), aff'd on rehearing, 559 F.2d 1077 (7th Cir. 1977), rev'd, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

The developing case law under § 504 is following a pattern typical of other implied rights of action. Frequently, the right to sue for injunctive relief is the first issue raised by plaintiffs seeking to establish a

which prohibits discrimination in the sale or rental of housing).

**13.** *E. g., Paton v. La Prade*, 524 F.2d 862, 869–70 (3d Cir. 1975).

**14.** *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**15.** *E. g., United States ex rel. Moore v. Koelzer*, 457 F.2d 892 (3d Cir. 1972).

**16.** *Berlin Democratic Club v. Rumsfeld*, 410 F.Supp. 144, 161–162 (D.D.C.1976).

**17.** *E. g., Patmore v. Carlson*, 392 F.Supp. 737, 740 (E.D.Ill.1975); *Walker v. McCune*, 363 F.Supp. 254 (E.D.Va.1973).

**18.** *Howard v. Warden, Petersburg Reformatory*, 348 F.Supp. 1204 (E.D.Va.1972), *appeal dismissed*, 474 F.2d 1341 (4th Cir. 1973).

**19.** No issue is presented in this case as to the relative appropriateness of monetary as opposed to injunctive relief. The former is the only means of compensating plaintiff for past discrimination.

new cause of action. Once that right is secured, the right to sue for damages invariably follows. *See, e. g., Sullivan v. Little Hunting Park, Inc.,* 396 U.S. at 238, 90 S.Ct. 400.

■ The common thread running through these cases is the principle enunciated by the Supreme Court in *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946):

> [W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights [are] invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done. (Footnotes omitted).

Where, as here, money damages are the only means of compensating a victim of past discrimination, that remedy must be available to the plaintiff. Thus, absent an expression of congressional intent to the contrary, private actions under § 504 cannot be limited to suits for equitable relief.

Defendants next argue that exhaustion of administrative remedies is a prerequisite to judicial relief under § 504. There is a definite split of authority on this issue. Several courts have required exhaustion, *Doe v. New York University,* 442 F.Supp. 522 (S.D.N.Y.1978); *Crawford v. University of North Carolina,* 440 F.Supp. 1047 (M.D. N.C.1977); *NAACP v. Wilmington Medical Center,* 426 F.Supp. 919, 924–25 (D.Del. 1977), while others have not, *Whitaker v. Board of Higher Education,* 461 F.Supp. 99 (E.D.N.Y.1978); *Michigan Paralyzed Veterans of America v. Coleman,* 451 F.Supp. 7

(E.D.Mich.1977). In addition, many courts have directly addressed § 504 claims without either discussing or requiring administrative exhaustion. *See e. g., Duran v. City of Tampa,* 430 F.Supp. 75 (M.D.Fla.1977); *Halderman v. Pennhurst State School & Hospital,* 446 F.Supp. 1295, 1323–24 (E.D. Pa.1977); *Vanko v. Finley,* 440 F.Supp. 656 (N.D.Ohio, 1977); *Barnes v. Converse College,* 436 F.Supp. 635 (D.S.C.1977); *Bartels v. Biernat,* 427 F.Supp. 226 (E.D.Wis.1977).[20]

■ In light of the unsettled state of the law on this question, the views of the responsible administrative agency are entitled to even greater weight than usual. *Natural Resources Defense Council, Inc. v. Train,* 166 U.S.App.D.C. 312, 326, 510 F.2d 692, 706 (D.C.Cir.1974). This is particularly true

> when the administrative practice at stake "involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new."

*Power Reactor Development Co. v. International Union of Electricians,* 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924 (1961), *quoting Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

■ Here, HEW has been outspoken in its belief that exhaustion of administrative remedies should not be required as a prerequisite to private litigation under § 504. Indeed, HEW has publicly taken this position as *amicus curiae* in a case before the Eastern District of New York. *See* Brief of the United States Department of Justice in *Whitaker v. Board of Higher Education,* 461 F.Supp. 99 (E.D.N.Y.1978).[21] Similarly,

---

**20.** Significantly, the only Supreme Court decision even to address § 504 does not favor exhaustion. Thus, in *Campbell v. Kruse,* 434 U.S. 808, 98 S.Ct. 38, 54 L.Ed.2d 65 (1977), the Supreme Court vacated and remanded a lower court decision which had been based on constitutional grounds "with directions to *decide* the claim based on the federal statute, § 504 of the Federal Rehabilitation Act of 1973." *Id.* at 808, 98 S.Ct. at 38 (emphasis added). By implication, the Supreme Court's ruling precluded any

attempt to subject plaintiffs' claim to prior administrative review.

**21.** In *Whitaker, supra,* Michael A. Middleton, Director of the Division of Policy and Procedures in the Office for Civil Rights ("OCR") submitted an affidavit which effectively summarized HEW's views. After setting forth OCR's responsibility for enforcing § 504 and its implementing regulations, the Middleton affidavit states:

HEW supported a private right of action under Title IX in *Cannon, supra,* at 1962–63, where the Supreme Court observed:

> The Department of Health, Education and Welfare, which is charged with the responsibility for administering Title IX, perceives no inconsistency between the private remedy and the public remedy. On the contrary, the agency takes the unequivocal position that the individual remedy will provide effective assistance to achieving the statutory purposes. See n. 8, *supra.* The agency's position is unquestionably correct. (Footnotes omitted).

From an administrative standpoint, therefore, private actions under § 504 must be seen as a necessary, if not essential, part of the enforcement scheme for that statute. Ultimately, the dispute over exhaustion reduces to one issue: whether there is a meaningful administrative enforcement mechanism for the vindication of personal rights under § 504. It is a well-established principle of administrative law that exhaustion is not required if the only available administrative remedy is plainly inadequate. *See generally,* L. Jaffe, *Judicial Controls of Administrative Action,* 426–32 (1965). This principle has been recognized in § 504 cases as elsewhere. Thus, in *Lloyd v. Regional Transportation Authority,* 548 F.2d at 1286, the Seventh Circuit held that the doctrine of exhaustion, as applied to private actions under § 504, presupposes the presence of a meaningful administrative enforcement mechanism structured to vindicate an affirmative right.[22]

The administrative enforcement regulations promulgated under § 504 are not adequate to protect the personal rights of individual victims of discrimination. The regulations adopted by HEW pursuant to § 504, 45 C.F.R. 84.6, incorporate by reference the administrative procedures applicable to Title VI of the 1964 Civil Rights Act, 45 C.F.R. 80.6–80.10. Under those regulations, the sole administrative remedy for a violation of § 504 is a termination of federal funds to the offending agency.[23] There is no provision for HEW to issue a binding order that damages be paid to an individual who has been injured by reason of a violation of § 504. In fact, HEW can totally ignore the victim of past discrimination in its efforts to secure voluntary compliance.[24]

"The Office for Civil Rights, as a matter of policy, believes that complainants should have a private right of action under Section 504 in federal courts, and that beneficiaries of HEW assisted programs should be allowed to file civil actions in federal courts without exhausting either the grievance procedures established by a recipient pursuant to 45 C.F.R. 84.7 or the Department's own complaint investigation procedures established pursuant to 45 C.F.R. 80.7. Such a standard for Section 504 is consistent with Departmental policy followed under Title VI of the Civil Rights Act of 1964, the statute prohibiting discrimination on the basis of race, color or national origin in federally assisted programs. The legislative history of the Rehabilitation Act Amendments of 1974 states that Section 504 should be enforced in the same manner that the Department enforces Title VI."

Since construction of § 504 has always been tied to interpretations of Title VI, *see Lloyd v. Regional Transportation Authority, supra,* 548 F.2d 1277, 1280, OCR's belief that an individual seeking redress for alleged racial discrimination may proceed directly to court pursuant to Title VI is especially noteworthy.

22. *Lloyd* was decided before administrative remedies under § 504 were established. Thus, the 7th Circuit expressly left open the question "Whether, after consolidated procedural enforcement regulations are issued to implement Section 504, the judicial remedy available must be limited to post-administrative remedy judicial review." *Lloyd v. Regional Transportation Authority,* 548 F.2d at 1286 n.29.

23. The administrative remedies available under Title IX are essentially the same. There is a statutory procedure for termination of federal financial support for institutions engaged in discriminatory practices, but none to remedy isolated violations directed at individual victims. *See* § 902 Title IX, 20 U.S.C. § 1682.

24. In *Cannon,* the Supreme Court noted that a federal fund cut-off is often inappropriate as a means of protecting individual citizens against discriminatory practices. *Cannon, supra,* at 1961. The Court observed that Congress itself considered the remedy severe and described it as "a last resort, all else—including 'law suits' —failing. *See, e. g.,* 110 Cong.Rec. 7067 (Sen. Ribicoff)." *Cannon, supra,* at 1961 n. 38. More limited injunctive relief (e. g., requiring

A cursory review of the HEW regulatory scheme illustrates that it is totally inadequate as a means of vindicating the rights of individual complainants. Upon the filing of a complaint (or on receipt of other "information" suggesting non-compliance with § 504) HEW must conduct an investigation to arrive at a preliminary determination whether the recipient is or is not in compliance with the statute. No provision is made for the complainant to furnish evidence or otherwise participate in the investigation. 45 C.F.R. 80.7(c). If HEW concludes that the recipient is in compliance, it gives notice to both the recipient and the complainant. However, the complainant has no right to object to, or seek administrative review of, HEW's finding. 45 C.F.R. 80.7(d)(2).

If voluntary compliance efforts fail, an administrative hearing is then held. 45 C.F.R. 80.8. The purpose of the hearing is to provide HEW with a forum to initiate final termination proceedings. 45 C.F.R. 80.8(c). The hearing is not intended to provide, nor has it operated as, a forum for individual complainants to obtain personal relief.[25] "In short, while the administrative process may effectively provide, by way of the threat of a funding termination, an incentive to comply with Section 504, it provides no means by which an individual can obtain personal redress for a § 504 violation." *Whitaker v. Board of Higher Education, supra,* at 108.[26] A termination of federal funds to the offending agency "will do nothing to remedy the damage [that] existing violations have already done to prospective plaintiffs." Note, "Implied Rights of Action to Enforce Civil Rights: The Case for A Sympathetic View," 87 Yale L.J. 1378, 1406 (1978).[27] It would be unprecedented to withhold a private remedy where, as here, the statute explicitly confers a benefit on a class of persons but does not provide a means by which they can activate and participate in the administrative process contemplated by the statute. *Cannon, supra,* at 1963 n. 41.[28] Accordingly, exhaustion is not required.

an institution to accept an applicant who had been improperly excluded) or monetary relief, are clearly more efficient means of dealing with isolated instances of discrimination. See *Cannon, supra,* at 1961–62; *Cumming v. Richmond County Board of Education,* 175 U.S. 528, 544, 20 S.Ct. 197, 44 L.Ed. 262 (1899). Furthermore, as the Court in *Cannon, supra,* at 1962 concluded,

[I]t makes little sense to impose on an individual, whose only interest is in obtaining a benefit for herself, or on HEW, the burden of demonstrating that an institution's practices are so pervasively discriminatory that a complete cut-off of federal funding is appropriate. The award of individual relief to a private litigant who has prosecuted her own suit is not only sensible but is fully consistent with—and in some cases even necessary to— the orderly enforcement of the statute. (Footnotes omitted).

25. Compare the elaborate administrative hearing and complaint regulations promulgated under the federal Education for All Handicapped Children Act of 1975, 20 U.S.C. § 1401 *et seq.,* which do provide for administrative review of individual complaints, 45 C.F.R. § 121a.500–121a.514.

26. Significantly, almost all of the Title VI cases which have required plaintiffs to exhaust their administrative remedies were cases in which the ultimate relief being sought was the termination of federal funds. *See, e. g., Green Street Association v. Daley,* 373 F.2d 1, 8-9 (7th Cir.), *cert. denied,* 387 U.S. 932, 87 S.Ct. 2054, 18 L.Ed.2d 995 (1967); *Johnson v. County of Chester,* 413 F.Supp. 1299, 1310-11 (E.D.Pa. 1976); *Green v. Cauthen,* 379 F.Supp. 361, 378-79 (D.S.C.1974); *Powelton Civil Home Owners Association v. Department of Housing & Urban Development,* 284 F.Supp. 809, 817-18 (E.D.Pa. 1968).

27. In this regard, the fact that HEW lacks the resources necessary to deal with individual complaints under § 504 without substantial delay is certainly relevant. *See Whitaker v. Board of Higher Education,* 461 F.Supp. at 108-9; *see also Cannon, supra,* at 1963, n. 42.

28. The Court in *Cannon* found no conflict between private suits and HEW's enforcement procedures under § 902 of Title IX. Those procedures were found to be inadequate because, like the regulations promulgated under § 504, they do not allow the complainant to participate in the investigation or subsequent enforcement proceedings, they do not mandate relief for the complainant if a voluntary compliance agreement is reached, and they do not even require the agency to investigate all complaints (a decision that often will be based on a lack of enforcement resources, rather than on any conclusion on the merits of the complaint). *Cannon, supra,* at 1963 n. 41. Given these

Having concluded that § 504 will support a private right of action for damages, the question remains whether the doctrine of *respondeat superior* applies to such actions. This issue arises because plaintiff is seeking to hold the named defendants, executive heads of various child welfare agencies, responsible in their official capacities for the actions of their subordinates. Again, this presents a question of first impression to be answered by reference to the express language of the HEW regulations, other civil rights statutes, and general policy considerations underlying § 504 and the doctrine of *respondeat superior.*

The concept of vicarious liability is an integral part of the regulatory scheme adopted by HEW to implement § 504. The regulations refer exclusively to the "recipients" of federal aid (here the agencies which defendants head) as responsible for complying with the terms of the statute. The regulations contain a specific requirement that any applicant for federal financial assistance submit an "assurance" to HEW that the program for which federal funding is sought "will be operated in compliance" with § 504. 45 C.F.R. § 84.5(a). If this "assurance" is broken, the recipient is responsible; and the recipient, not the worker, can then be directed to take remedial action. 45 C.F.R. § 84.6(a). Finally, HEW's ultimate sanction, a federal fund cut-off, is directed at the recipient and not the employee who may have actually caused the discrimination.

■ With respect to other civil rights statutes, it appears that the general rule is that *respondeat superior* does apply. The Supreme Court's decision in *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) that *respondeat superior* was not applicable to § 1983 suits is confined to the peculiar characteristics of that statute. The ruling was predicated on an expression of legislative intent as evidenced in debates on the passage of the Civil Rights Act of 1871 not to impose affirmative obligations on local governments. This rationale does not apply to § 504. The Rehabilitation Act was clearly intended to impose affirmative obligations on local governments. *See, e. g., Lloyd v. Regional Transportation Authority, supra* (local governments required to adjust their mass transit systems to accommodate the needs of the handicapped). In addition, the wording of the two statutes is entirely different; § 1983 focuses on the identity of the wrongdoer, § 504 contains only a general prohibition against discrimination in federally funded programs. *Cf. Mahone v. Waddle,* 564 F.2d 1018, 1931 (3d Cir. 1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) (comparing the Civil Rights Acts of 1871 and 1866).

The doctrine of *respondeat superior* has been applied in private actions under civil rights statutes other than § 1983. *See, e. g.,* Title VIII of the Fair Housing Act of 1968, 42 U.S.C. § 3612 (prohibiting discrimination in the sale or rental of housing);[29] Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e–5, (prohibiting employment discrimination).[30] The doctrine is also ap-

limitations in the administrative enforcement process, the Supreme Court refused to require exhaustion of administrative remedies before a private suit could be brought under Title IX.

**29.** *See Marr v. Rife,* 503 F.2d 735, 740–742 (6th Cir. 1974); *Jeanty v. McKey & Poague, Inc.,* 496 F.2d 1119 (7th Cir. 1974); *United States v. Northside Realty Associates, Inc.,* 474 F.2d 1164, 1168 (5th Cir. 1973), *cert. denied,* 424 U.S. 977, 96 S.Ct. 1483, 47 L.Ed.2d 747, *rehearing denied,* 425 U.S. 985, 96 S.Ct. 2192, 48 L.Ed.2d 810 (1976); *Harrison v. Otto G. Heinzeroth Mtg. Co.,* 430 F.Supp. 893, 896–97 (N.D. Ohio 1977); *United States v. L & H Land Corp., Inc.,* 407 F.Supp. 576, 580 (S.D.Fla.1976); *Zuch v. Hussey,* 394 F.Supp. 1028, 1051 (E.D.Mich. 1975); *Sanborn v. Wagner,* 354 F.Supp. 291,

295 (D.Md.1973); *Williamson v. Hampton Management Co.,* 339 F.Supp. 1146, 1149 (N.D. Ill.1972).

**30.** *See, e. g., Miller v. Bank of America,* 600 F.2d 211 (9th Cir. 1979); *Barnes v. Costle,* 183 U.S.App.D.C. 90, 100, 561 F.2d 983, 993 (D.C. Cir.1977); *Ostapowicz v. Johnson Bronze Co.,* 369 F.Supp. 522, 537 (W.D.Pa.1973), *aff'd,* 541 F.2d 394 (3d Cir. 1976), *cert. denied,* 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753, *rehearing denied,* 430 U.S. 911, 97 S.Ct. 1187, 51 L.Ed.2d 589 (1977). *Compare, Munford v. James T. Barnes & Co.,* 441 F.Supp. 459, 466 (E.D.Mich. 1977) (employer not automatically vicariously liable for discriminatory acts of supervisors (dicta)).

plied to suits brought under 42 U.S.C. § 1981. *See Mahone v. Waddle, supra.* That case involved a civil rights action against the City of Pittsburgh and various individual police officers under 42 U.S.C. §§ 1981 and 1983, as well as the fourteenth amendment. Although the court dismissed plaintiff's § 1983 claims against the city on the authority of *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *overruled by Monell v. Dept. of Social Services, supra,* it upheld plaintiff's right to sue the city under § 1981, stating:

> In other than section 1983 actions [an] employer would ordinarily . . . be held liable under the doctrine of *respondeat superior* for [the] misconduct [of its employees] if it occurred during the performance of their duties and within the scope of their employment.

564 F.2d at 1021. *See also Sethy v. Alameda County Water District,* 545 F.2d 1157, 1162 (9th Cir. 1976).

■ The application of *respondeat superior* to § 504 suits would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped. The justification for imposing vicarious liability on employers for the acts of their employees is well-known. It creates an incentive for the employer to exercise special care in the selection, instruction and supervision of his employees, thereby reducing the risk of accidents. W. Prosser, *Law of Torts,* § 69 at 459 (4th Ed. 1971). In the absence of a Congressional directive to the contrary, this court can assume only that Congress intended the judiciary to use every available tool to eliminate discrimination against the handicapped in federally funded programs. *Cf. Porter v. Warner Holding Co.,* 328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946).

■ In sum, there are strong legal precedents and compelling policy considerations favoring application of the doctrine of *respondeat superior* to § 504 actions. However, defendants have raised a procedural obstacle barring that doctrine's application in this case. Defendants claim that plaintiff has failed to name as defendants the welfare agencies who may properly be held vicariously liable under the doctrine of *respondeat superior.* The doctrine holds employers vicariously liable for the acts of employees; it does not apply to executive personnel who fall into the category of employees. In this case, vicarious liability attaches to the public and private agencies which the named defendants head. Although the agencies are not named in the complaint, plaintiff contends that it is sufficient to name the chief executives in their official capacities.

■ Plaintiff is correct in this assertion with respect to the municipal agencies. Municipal corporations and their officials are treated as being in privity for purposes of suits by or against either one. 50 C.J.S. *Judgments* § 796 at 337 (1947); 56 Am. Jur.2d, *Municipal Corporations* § 874 (1971). As these authorities state, a judgment for or against a public officer, in an action brought by or against him in his official capacity, is conclusive on the municipal corporation which he represents. Conversely, a judgment for or against a municipal corporation is binding and conclusive on an officer thereof, except with respect to his private or individual rights or interests. Thus, it makes no difference whether suits against municipal agencies are brought in the name of the agency, or in the name of an agency officer in his or her official or representative capacity. *Monell v. Dept. of Social Services of the City of New York,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *McKinney v. City of East St. Louis,* 39 Ill.App.2d 137, 188 N.E.2d 341 (1963).

■ By contrast, identity of interest is not presumed between private corporations and their officers. Thus a private corporation is not necessarily made a party to an action by naming an officer in his or her representative capacity. *See* 50 C.J.S. *Judgments* § 794. *Fortier v. New Orleans National Bank,* 112 U.S. 439, 444–45, 5 S.Ct. 234, 28 L.Ed. 764 (1884) dealt with this

**944**

precise question and resolved it by reference to the parties' own perception perceptions and treatment of the action, and not the technicality of which entity, the corporation or the officer, was named in the pleadings.

In *Fortier*, the action was brought in the name of A.B. "in his capacity as president of the New Orleans National Bank." Throughout the pleadings and all the lower court proceedings the bank was regarded as the true plaintiff, or the real party in interest. On appeal to the Supreme Court, the defendant raised a jurisdictional objection based on the fact that the bank president and the defendant were citizens of the same state. The Supreme Court held that the defendant was bound by the parties' construction of the action below as a suit by the bank. Accordingly, the court held that the objection to jurisdiction was untimely. The court stated that "[w]e must adhere to the construction of the bill asserted by the bank and acquiesced in by the defendant." *Id.* at 445, 5 S.Ct. at 237.

On the authority of *Fortier*, this action must be dismissed against defendant Victor Remer, Executive Director of the Children's Aid Society, a private corporation. Until this stage of the action, when only the § 504 claim remains viable, the parties have at all times treated the action as one directed at Remer personally. This was consistent with the fact that this action was originally styled as a § 1983 suit against responsible individuals and not the agencies which employed them. The question of whether it is appropriate at this time to permit a substitution of the Children's Aid Society for Victor Remer as the proper party defendant is not before me.

For the reasons stated above, plaintiff may proceed with this damage action under § 504 of the Rehabilitation Act against the municipal defendants. The action is dismissed as against defendant Victor Remer.

So ordered.