Ronald **WILDER**, Plaintiff,

v.

The **CITY OF NEW YORK,** et al., Defendants.

No. 80 Civ. 1373.

United States District Court, E.D. New York.

Aug. 9, 1983.

Burns, Summit, Rovins & Feldesman, New York City (Ira G. Greenberg, Jonathan F. Horn, New York City, of counsel), for plaintiff.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City (David Drueding, Charlotte Biblow, New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

█ This is an action for damages brought against the City of New York and its Department of Social Services (the "City") for failure to provide plaintiff, Ronald Wilder, with adequate psychiatric care. In addition to alleging violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 ("§ 504") and Section 408 of the Social Security Act, 42 U.S.C. § 608 ("§ 408"), Mr. Wilder has filed a claim under 42 U.S.C. § 1983 for an alleged violation of his rights under the due process clause of the fourteenth amendment.[1] The City has moved for dismissal of the complaint for lack of subject matter jurisdiction and for failure to state a claim, Fed.R.Civ.P. 12(b)(1), (6), or, in the alternative, for summary judgment. Fed.R.Civ.P. 56. Because the parties have submitted materials outside the pleadings, I will treat the motion as one for summary judgment. Fed.R.Civ.P. 12(b)(6) & 56.

## FACTS

Mr. Wilder is an emotionally disturbed adult who was born in September, 1961. He was orphaned at the age of five when his father killed his mother and then committed suicide. The traumatic effect of this incident, which occurred in Mr. Wilder's presence, is apparently the cause of his psychological problems.

In 1967, Mr. Wilder came into the custody of the City's foster care system. He was placed in various foster homes until 1975, when the City determined that he required a more structured environment. At that point, he was transferred to the St. Christopher's School, which provides services for emotionally disabled children. While at St. Christopher's, Mr. Wilder was twice hospitalized as a result of violent behavior. He was subsequently transferred from St. Christopher's to several different care facilities and psychiatric hospitals.

At age 21, he is now a patient at the Manhattan State Psychiatric Hospital. Mr. Wilder contends that throughout the long period he was in the custody of City foster care facilities, he was denied adequate psychiatric treatment and rehabilitation. He argues that rather than provide him with counselling and therapy, the foster care facilities chose to curb his periodically violent behavior by routinely administering debilitating psychotropic drugs.

---

1. Mr. Wilder initially asserted a claim under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6000–81; however, in light of the Supreme Court's decision in *Pennhurst State School & Hosp. v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), he has withdrawn that claim.

Additionally, Mr. Wilder seeks a judgment "enjoining all defendants from failing to provide [him] appropriate care, treatment and habilitation." Amended Complaint at 6. It appearing, however, that Mr. Wilder, now twenty-one years of age, is no longer eligible for the foster care program, his claims for such injunctive relief have become moot and, accordingly, are dismissed. *Cf. Doe v. Marshall,* 622 F.2d 118 (5th Cir.1980) (claims for injunctive relief under § 504 rendered moot by plaintiff's graduation from high school).

Mr. Wilder contends that the City discriminated against him on the basis of his psychological handicap. He alleges that the City's failure to provide psychiatric therapy rendered it impossible for him to participate in other services routinely afforded to non-disturbed foster children such as education and vocational training. Mr. Wilder argues, moreover, that his trauma-induced mental instability has been exacerbated by the City's neglect to the point where he cannot function in society.

The City answers that Mr. Wilder's various placements and method of treatment were the result of professional psychiatric evaluation and were commensurate with available resources.

## JURISDICTION

■ Although the City makes a perfunctory challenge to the Court's subject-matter jurisdiction it offers no support in its brief for that challenge. Because plaintiff alleges violations of federal statutes, and asserts a colorable claim under the Constitution, I find that the Court has subject-matter jurisdiction.

## THE STATUTORY CLAIMS

The City challenges Mr. Wilder's statutory claims on two grounds. It argues that: (1) private claims for damages are not cognizable under either § 504 of the Rehabilitation Act or § 408 of the Social Security Act, and (2) even if those statutes do provide for private damages, the City did not violate the statutes.

## § 504 OF THE REHABILITATION ACT

■ While courts have widely recognized the right of individuals to sue for injunctive relief under § 504, (see Dopico v. Goldschmidt, 687 F.2d 644 (2d Cir.1982); Leary v. Crapsey, 566 F.2d 863 (2d Cir.1977) (per curiam)), there is little law on whether an individual may seek damages under the statute. Several District Courts and apparently the only Court of Appeals to rule on the issue have allowed private claims for damages. See Miener v. State of Missouri, 673 F.2d 969, 979 (8th Cir.1982); Campbell v. Talladega County Bd. of Educ., 518 F.Supp. 47, 56–57 (N.D.Ala.1981); Hutchings v. Erie City and County Bd. of Directors, 516 F.Supp. 1265, 1268–69 (W.D.Pa. 1981); Patton v. Dumpson, 498 F.Supp. 933, 937–939 (S.D.N.Y.1980); Poole v. South Plainfield Bd. of Educ., 490 F.Supp. 948, 949 (D.N.J.1980).

These courts have recognized that when a federal statute creates a right, such a right "implies the existence of all necessary and appropriate remedies." Miener v. State of Missouri, 673 F.2d at 977. Moreover, the inadequacy of injunctive and declaratory relief to compensate a particular plaintiff warrants the award of monetary damages. Id; Patton v. Dumpson, 498 F.Supp. at 939. Finally, I note that the skimpy evidence of congressional intent concerning § 504 does not oppose the awarding of damages. See H.R.Rep. 95–1780, 95th Cong., 2d Sess., reprinted in U.S.Code Congressional and Administrative News, 1978, 7312, 7375–79.

The City cites several cases that deny private plaintiffs the right to sue for damages under § 504 for violations of the Education For All Handicapped Children Act of 1975 ("EAHCA"), 20 U.S.C. §§ 1401 et seq. The courts deny damage claims in those cases because using § 504 as a vehicle to sue for violations of the EAHCA amounts to an end run around the prohibition of damage awards under the EAHCA itself. Reineman v. Valley View Comm. Sch. Dist. # 364–U, 527 F.Supp. 661, 665 (N.D.Ill. 1981). See also Monahan v. State of Nebraska, 687 F.2d 1164, 1169–70 (8th Cir. 1982). The EACHA, however, is not involved here.

The Supreme Court's recent decision in Guardians Assn. v. Civil Serv. Comm'n; N.Y.C., —— U.S. ——, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983), indirectly confirms the availability of damages under § 504. In Guardians Assn., the Court held that damages could be awarded for violations of Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d, et seq., upon a showing of discriminatory intent. At ——. Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2), provides that

the remedies available for violations of § 504 shall be those which are available under Title VI. The Court's holding in *Guardians Assn.* that damages are available under Title VI, then, would suggest that damages are available for violations of § 504.

Although the Court in *Guardians Assn.* requires a showing of discriminatory intent before awarding damages, such a showing is unnecessary here. Section 504 differs from Title VI in that discriminatory intent is not essential to a violation of the Rehabilitation Act. *Pushkin v. Regents of University of Colorado,* 658 F.2d 1372, 1384–86 (10th Cir.1981); *New Mexico Ass'n for Retarded Citizens v. State of N.M.,* 495 F.Supp. 391, 398. A violation of § 504 occurs when an "otherwise qualified handicapped individual" is excluded from participation in a federally funded program "solely by reason of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 403, 405, 99 S.Ct. 2361, 2365, 2366, 60 L.Ed.2d 980 (1979).

It is true that institutions are not compelled by § 504 to make substantial modifications in their programs to accommodate the handicapped. Nevertheless, "[s]ituations may arise where a refusal to modify an existing program might become unreasonable and discriminatory." *Southeastern Community College,* 442 U.S. at 412–13, 99 S.Ct. at 2370. In short, "modest, affirmative steps" may be required to eliminate discrimination. *Dopico v. Goldschmidt,* 687 F.2d 644, 652 (2d Cir.1982).

■ Whether Mr. Wilder's treatment was justified in light of the professional evaluation of his handicap and the limited resources available to the City, or whether the City should have taken additional "modest, affirmative steps" to comply with § 504 cannot be decided on a motion for summary judgment. *See Dopico,* 687 F.2d at 654. Accordingly, the City's motion for summary judgment dismissing plaintiff's Rehabilitation Act claim is denied.

### § 408 OF THE SOCIAL SECURITY ACT

■ Although courts have recognized a private cause of action for injunctive relief under § 408, apparently no court has yet awarded damages under that statute. *See e.g., Gary W. v. State of La.,* 437 F.Supp. 1209, 1213 (E.D.La.1976) (injunctive relief). One court has observed that a plaintiff may invoke 42 U.S.C. § 1983 ("§ 1983") to enjoin violations of § 408. *Lynch v. King,* 550 F.Supp. 325, 328, 343 (D.Mass.1982). It should be emphasized that in addition to providing for injunctive relief, § 1983 provides for damage actions to redress violations of rights secured by federal law. *Carey v. Piphus,* 435 U.S. 247, 253–57, 98 S.Ct. 1042, 1046–49, 55 L.Ed.2d 252 (1978). It stands to reason that in an action brought under § 1983 to redress violations of § 408 of the Social Security Act the plaintiff may invoke all the remedies provided by § 1983, including an action for damages, where, as here, injunctive relief is worthless. Moreover, allowing private plaintiffs to seek damages for violations of § 408 promotes the deep concern of Congress for the care of foster children, particularly those requiring medical or psychiatric care. *See Miller v. Youakim,* 440 U.S. 125, 138–43, 99 S.Ct. 957, 965–68, 59 L.Ed.2d 194 (1979).

■ Having determined that damage claims lie for violations of § 408, it remains to be seen whether Mr. Wilder has a claim under that section that can withstand the City's motion for summary judgment. Section 408(f) requires that any program receiving federal funding under that section prepare individual plans "to assure that [each child] receives proper care." Although the statute does not explicitly require the implementation of that plan, it would be capricious to suppose that Congress did not expect at least an attempt to do so. What constitutes "proper care" is, of course, subject to debate. There is some support for the proposition that the federal Constitution supplies the standard of "proper care." *Gary W. v. State of La.,* 437 F.Supp. 1209, 1220 (E.D.La.1976). The Court need not address this question at present because the parties offer conflicting

evidence of the actual degree of care provided. Again, this material fact cannot be decided on motion for summary judgment.

## DUE PROCESS

■ Mr. Wilder also claims that the foster facilities' continual use of psychotropic drugs to control his periodic episodes of violent behavior violated his liberty interests under the due process clause of the fourteenth amendment. The City counters that the due process clause affords individuals no right to a prescribed level of psychiatric treatment.

In *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), the Supreme Court held that persons who are involuntarily committed to state institutions for the mentally retarded have a protected liberty interest under the due process clause entitling them to minimally adequate training to ensure their safety and freedom from undue restraint. *Id.* 102 S.Ct. at 2460. The City, however, would distinguish *Romeo* on two grounds.

First, the City contends, *Romeo* concerned only persons who had been involuntarily committed and, therefore, should not be applied here. Even though the plaintiff's status while in the foster care of the state may not be tantamount to involuntary commitment, *see Child v. Beame,* 412 F.Supp. 593, 608 (S.D.N.Y.1976), *Romeo* should not be read so narrowly. The Court recognized that individuals have constitutionally protected liberty interests that are infringed by unnecessary physical restraint and by the lack of "minimally adequate care and treatment" which would obviate the need for restraint. *Romeo,* 102 S.Ct. at 2459–60. Under *Romeo,* the level of care must be determined by balancing the individual's liberty interest against the State's interest in restraining him. *Id.* 102 S.Ct. at 2461.

Although not involuntarily committed to an institution, Mr. Wilder, as a foster child, was a ward of the City. Absent parents or guardians to protect his rights and to make decisions as to treatment, and unable to make such decisions himself, Mr. Wilder could have looked only to the City to ensure that protection. Certainly, "[an] individual's liberty is not less worthy of protection merely because he has consented to be placed in a situation of confinement." *Association for Retarded Citizens of N.D. v. Olson,* 561 F.Supp. 473, 485 (D.N.D.1981). *See Philipp v. Carey,* 517 F.Supp. 513, 519 (N.D.N.Y.1981).

■ The City also argues that even if the due process clause mandates some level of treatment, the City has met that requirement. The test is set forth in *Romeo*: "[L]iability may be imposed only when the decision by the professional [as to proper treatment] is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Id.* 102 S.Ct. at 2462. Although the professional's decision is presumptively correct, that presumption may be rebutted. *Id.* As is the case with Mr. Wilder's statutory claims, this determination requires a balancing of factors which can only be performed on a fully developed factual record establishing the actual level of treatment Mr. Wilder was afforded.[2]

Accordingly, the City's motion for summary judgment is denied in all respects.

SO ORDERED.

---

**2.** The City also attacks Mr. Wilder's due process claim on the ground that it was insufficiently detailed to satisfy the pleading requirements of § 1983. Plaintiffs in actions under § 1983, however, are required only to set forth "specific illegal misconduct and resultant harm in a way which will permit an informed ruling whether the wrong complained of is of federal cognizance." *Duncan v. Nelson,* 466 F.2d 939, 943 (7th Cir.), *cert. denied,* 409 U.S. 894, 93 S.Ct. 175, 34 L.Ed.2d 152 (1972). *See Durso v. Rowe,* 579 F.2d 1365, 1371 (7th Cir.1979); *Fine v. City of New York,* 529 F.2d 70 (2d Cir.1975). Moreover, the Court notes that the City did not see fit to file a motion for a more definite statement under Fed.R.Civ.P. 12(e).