**Morris SCHWIMMER, et al., Plaintiffs,**

**v.**

**Gregory KALADJIAN, etc.,
et al., Defendants.**

**No. 92 Civ. 2376 (SWK).**

United States District Court,
S.D. New York.

Oct. 7, 1993.

Shea & Gould by Jonathan Young, New York Legal Assistance Group by Yisroel Schulman, New York City, for plaintiffs.

Robert Abrams, Atty. Gen. of State of N.Y. by Judy Nathan, New York City, for defendant Gregory Kaladjian.

O. Peter Sherwood, Corp. Counsel of City of New York by Sanjay Malhotra, New York City, for defendants Barbara Sabol, Robert L. Little, Mary Harris and Joseph Guilford.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs Morris Schwimmer ("Mr. Schwimmer") and Rifka Schwimmer ("Mrs. Schwimmer") (collectively, the "Schwimmers") bring this action challenging the allegedly unlawful and involuntary removal of their minor son, plaintiff Yoel Schwimmer ("Yoel"), from their home by the defendants, and the allegedly unlawful and non-consensual physical examinations of minor plaintiffs Devorah Schwimmer, Berish Schwimmer, Faiga Dina Schwimmer, David Schwimmer, Yoel Schwimmer and Rachel Yachet Schwimmer (collectively, the "Schwimmer children"). Plaintiffs also challenge the defendants' practices, patterns and policies in determining when and how to remove children whose parents are suspected of child abuse. Defendant Gregory Kaladjian ("Kaladjian") moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the amended complaint against him for failure to state a claim.[1] For the reasons set forth below, Kaladjian's motion is granted in its entirety.

### BACKGROUND [2]

Defendant Kaladjian was the Commissioner of the New York State Department of Social Services ("DSS") during the relevant time period.[3] As such, he was responsible for the maintenance of the New York State Registry, and had oversight and supervisory responsibilities over all aspects of the New York City Human Resources Administration ("HRA"), including the Child Welfare Administration ("CWA"). Defendant Barbara Sabol ("Sabol") was the Administrator of the HRA, charged by law with investigating reports of alleged child abuse within her jurisdiction. Defendant Robert L. Little ("Little") was employed by HRA as Executive Deputy Commissioner of CWA. Defendant Mary Harris ("Harris") was employed by HRA as a manager of CWA. Defendant Joseph Guilford ("Guilford") was employed by HRA as a supervisor of CWA. All of the defendants are sued in their official capacity.[4]

On June 22, 1991, Yoel, then 27 months old, lost his balance and fell backward down several wooden steps. Mrs. Schwimmer examined Yoel, and observed several bruises on his forehead and cheeks. Upon determining that he did not suffer any serious injury, however, Mrs. Schwimmer did not seek the services of a doctor.

Subsequently, on June 24, 1991, Mr. Schwimmer took Yoel and two other Schwimmer children for regular medical checkups to Dr. Gerald Rood ("Dr. Rood"), a private physician. During the examination, Dr. Rood questioned Mr. Schwimmer as to the origins of Yoel's bruises. Although Mr. Schwimmer explained that Yoel had fallen, and described the circumstances of the fall, Dr. Rood informed Mr. Schwimmer that, because Yoel had more than three bruises, he was required to report the incident to the New York State Central Registry of Child Abuse and Maltreatment (the "Central Registry"). Pursuant to New York law, the Central Registry submits such reports to the agency

---

1. Although Kaladjian's motion papers suggest that he also moves, pursuant to Rule 12(c), for judgment on the pleadings, the Court will not consider this motion as it was not formally made. *See* Defendant Kaladjian's Notice of Motion at 1.

2. The following facts are taken from the amended complaint, dated July 2, 1992 ("Amended Complaint"). For the purposes of this motion, the Court must accept the allegations of the Amended Complaint as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

3. Kaladjian argues that he was not the acting Commissioner during this time period. As Kaladjian has submitted no proof in support of this contention, however, for the purposes of this motion, the Court will assume that Kaladjian was, in fact, the acting Commissioner at the time of the events outlined in the Amended Complaint.

4. Guilford is also sued individually.

responsible for investigation. *See* N.Y.Soc. Serv.Law § 415.

Upon receiving the report, two CWA case workers physically examined four of the Schwimmer children in their home on the evening of June 24, 1991. After their examination, the case workers informed Mrs. Schwimmer that their examination raised no suspicion of child abuse. The following morning, on June 25, 1991, a CWA employee, Audrey Dragich, also visited the Schwimmers' home. After examining the home, questioning Mrs. Schwimmer and two other witnesses to Yoel's fall, and speaking with the Schwimmers' oldest daughter, Ms. Dragich told Mrs. Schwimmer that she also believed the accusation of child abuse was false and groundless.

Nevertheless, on June 26, 1991, at approximately 12:00 a.m., three CWA workers, accompanied by several police officers, allegedly removed Yoel from the Schwimmer home and took him to Beth Israel Hospital, where Yoel was examined and x-rayed. Yoel was detained at the hospital and taken into CWA custody. The Schwimmers allegedly were prohibited from visiting their son.

During the evening of June 26, 1991, Yoel was taken by the CWA to the Ohel foster care agency. Subsequently, on June 27, 1991, the Schwimmers appeared for a hearing before Judge Grunbaum in the Brooklyn Family Court. At the hearing, the CWA allegedly agreed to allow Yoel to remain in the custody of Mr. Schwimmer's brother, Mendel Schwimmer, pending the resolution of the case. Judge Grunbaum thereupon scheduled another hearing for July 1, 1991.

On June 28, 1991, two CWA employees visited the Schwimmers' home and examined the remaining Schwimmer children. One CWA employee allegedly informed the Schwimmers that there was no evidence of physical abuse of their children.

At the July 1, 1991 hearing, the CWA announced that Yoel could be returned to his parents, allegedly stating that the Schwimmer home was a safe environment. Judge Grunbaum adjourned the case until August 7, 1991, in order to allow the CWA to obtain Yoel's hospital records. Accordingly, on July 1, 1991, Yoel was returned to his parents' custody.

Subsequently, at the August 7, 1991 hearing, the CWA withdrew their case against the Schwimmers on the ground that Yoel's bruises were consistent with the explanation the Schwimmers initially offered. To date, plaintiffs allege that they have received neither a written follow-up report regarding the CWA investigation, nor any written verification of its closure from the CWA. However, on or about December 17, 1991, plaintiffs allege that the DSS sent them a letter stating that:

WE CAN NOW INFORM YOU THAT AS A RESULT OF THE ASSESSMENT MADE BY THE LOCAL CHILD PROTECTIVE SERVICE, NO CREDIBLE EVIDENCE WAS FOUND TO BELIEVE THAT THE CHILD(REN) HAS BEEN ABUSED OR MALTREATED. THE REPORT HAS, THEREFORE, BEEN CONSIDERED "UNFOUNDED."

(Capitals in the original).

The Amended Complaint alleges twelve causes of action against Kaladjian.[5] Specifically, plaintiffs allege that the defendants violated the 4th, 5th, 9th and 14th Amendments to the United States Constitution, as well as various state and federal statutes and regulations by (1) physically examining the Schwimmer children for evidence of child abuse without either a search warrant, court order, probable cause or a reasonable suspicion that the Schwimmer children were victims of such abuse, and without advising the Schwimmers of their right to refuse these examinations; (2) coercing the Schwimmers to consent to have Yoel x-rayed at the hospital; (3) involuntarily removing Yoel from his home without reasonable cause to believe

---

**5.** The Amended Complaint contains thirty-five causes of action, divided into "Constitutional, Statutory and Regulatory Causes of Action" (1 through 12) and "Tort Causes of Action" (13 through 35). However, plaintiffs have consented to dismiss those portions of the Amended Complaint seeking damages from Kaladjian and from the DSS, including counts 13 through 35. Plaintiffs thus intend to press against the State only the 1st through 12th claims and, with respect to those claims, plaintiffs seek only declaratory and injunctive relief. *See* Opp. Mem. at 3–4.

that he was in "imminent danger;" (4) subjecting Yoel to involuntary medical examinations at the hospital; (5) filing a family court abuse petition without reasonable cause to believe that any abuse had occurred; (6) failing to provide either adequate training or supervision to workers involved in the investigation of child abuse; (7) failing to provide adequate and timely notice either of Yoel's removal from the Schwimmer home or Yoel's location after he was removed from the home; (8) failing to place Yoel with a relative or family member; (9) failing to provide adequate and timely notice to the Schwimmers of the procedures to re-obtain Yoel; (10) failing to provide adequate and timely notice of either the defendants' findings with respect to allegations of child abuse or the procedures to amend or expunge information concerning the investigation; and (11) failing to provide access to case records. Plaintiffs also allege that, "as a result of the continued existence of the official patterns, practices and policies of this complaint, Plaintiffs, in any subsequent child abuse investigation, would again be subject to the same investigative procedures that would violate their rights." Amended Complaint, ¶ 106. Plaintiffs seek relief declaring that defendants' patterns, practices and policies violated their rights and constituted an illegal search and seizure, and enjoining the defendants from such patterns, practices and policies.

Defendant Kaladjian now moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Amended Complaint for failure to state a claim. For the reasons set forth below, this motion is granted.

## DISCUSSION

### I. Standing

Kaladjian contends that plaintiffs' claims for declaratory and injunctive relief should be dismissed as moot because plaintiffs have failed to demonstrate the existence of an ongoing case or controversy. The Court agrees.

▓ Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the United States Constitution by al-

leging an actual case or controversy. *See Los Angeles v. Lyons,* 461 U.S. 95, 101, 103 S.Ct. 1660, 1664, 75 L.Ed.2d 675 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The "actual case or controversy" doctrine requires plaintiffs to "demonstrate a 'personal stake in the outcome,' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *Los Angeles v. Lyons,* 461 U.S. at 101, 103 S.Ct. at 1664 (quoting *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)). "Abstract injury is not enough." *Id.* Plaintiffs must show that they have sustained or are immediately in danger of sustaining some direct injury as the result of the challenged conduct. *Id.* 461 U.S. at 102, 103 S.Ct. at 1665.

### A. Injunctive Relief

▓ In order to establish the need for injunctive relief, the moving party must demonstrate that the defendant's conduct is causing him or her irreparable harm. *Levin v. Harleston,* 966 F.2d 85, 90 (2d Cir.1992); *Farmland Dairies v. McGuire,* 789 F.Supp. 1243, 1250 (S.D.N.Y.1992). This requirement cannot be met absent a showing of a real or immediate threat that the plaintiff will be wronged again. *Id.; see also Los Angeles v. Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670. While past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton,* 414 U.S. at 493, 94 S.Ct. at 675. Thus, "there must be sufficient immediacy, reality and causality between defendants' conduct and plaintiffs' allegations of future injury" to warrant injunctive relief. *Weiser v. Koch,* 632 F.Supp. 1369, 1373 (S.D.N.Y.1986).

▓ In this case, plaintiffs contend that they suffer from a real and immediate threat of injury as they have several young and active children who are likely to sustain innocent bruises which may result in the type of investigation and seizure that occurred here.

The Court disagrees. Plaintiffs have failed to allege that they have been the subject of repeated investigations for possible child abuse. In fact, there is no evidence that plaintiffs are part of any unique group targeted by the defendants, or that they are more likely than any other family to be subject to the conduct allegedly committed herein. Absent a sufficient likelihood that they will again be wronged in a similar way in the future, plaintiffs are no more entitled to an injunction than any other citizen of New York State.[6] Accordingly, plaintiffs lack standing to obtain injunctive relief against Kaladjian. For the reasons set forth above, plaintiffs also lack standing to obtain injunctive relief against defendants Sabol, Little, Harris and Guilford.

## B. Declaratory Relief

Plaintiffs contend that, even if they do not have standing to seek injunctive relief, they are nonetheless entitled to a judgment declaring that the defendants' patterns, practices and policies are violative of the rights secured by the United States Constitution, federal and state law, and that the defendants' conduct constituted an illegal search and seizure. The Court finds, however, that declaratory relief is not warranted in this case.

■ It is a fundamental rule that a court may not render advisory opinions. *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969). Moreover, while the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, permits federal courts to make a declaration of rights "[i]n a case of actual controversy within its jurisdiction," *id.*, § 2201, the United States Supreme Court

has cautioned against the promulgation of declaratory judgments "on issues of public moment, even falling short of constitutionality, in speculative situations." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962). Thus, although plaintiffs need not make a showing of irreparable harm in order to obtain a declaratory judgment, a claim for declaratory relief may be addressed by this Court only if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality*." *Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (emphasis in original) (quoting *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)).

■ While the question of whether a particular case presents a substantial controversy necessarily is one of degree, *see Long Island Lighting Co. v. County of Suffolk, New York*, 604 F.Supp. 759, 762 (E.D.N.Y. 1985), the Court finds that plaintiffs' allegations of future misconduct consist of no more than mere speculation. Specifically, plaintiffs' fears that they will again be subject to the conduct set forth in the Amended Complaint cannot be realized absent the occurrence of several future events, including: (1) a minor plaintiff sustaining innocent injuries; (2) such injuries being reported to the Central Registry; (3) plaintiffs being investigated and examined for suspected child abuse; (4) such investigation resulting in the same conduct complained of in the Amended Complaint. Given this number of contingencies, plaintiffs' request for declaratory relief is

---

**6.** Moreover, plaintiffs cannot benefit from the exception to the Article III standing requirement for cases that are deemed "capable of repetition yet evading review." *Diotte v. Blum*, 585 F.Supp. 887, 895 (N.D.N.Y.1984). The Supreme Court has limited the scope of this exception to only those cases in which: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Id.* (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 348,

46 L.Ed.2d 350 (1975)). A mere physical or theoretical possibility of future injury is not sufficient to satisfy this test. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982). Rather, "there must be 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (citing *Weinstein v. Bradford*, 423 U.S. at 149, 96 S.Ct. at 347). As set forth, *supra*, plaintiffs have failed to allege anything more than mere speculation that the conduct complained of will injure them in the future.

inappropriate.[7]  *See Long Island Lighting Co. v. County of Suffolk, New York,* 604 F.Supp. at 762 (granting defendant's motion to dismiss where plaintiff's request for declaratory relief did not present a ripe controversy).  Accordingly, plaintiffs lack standing to obtain declaratory relief against Kaladjian.[8]  Plaintiffs similarly lack standing to obtain declaratory relief against defendants Sabol, Little, Harris and Guilford.

### CONCLUSION

For the reasons set forth above, defendant Kaladjian's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), is granted in its entirety.  Furthermore, the Court dismisses, *sua sponte*, those portions of plaintiffs' claims that seek injunctive and/or declaratory relief against defendants Sabol, Little, Harris and Guilford in this action.  The remaining parties in this case are directed to appear before this Court for a pre-trial conference on Thursday, November 18, 1993, at 10:30 a.m.

SO ORDERED.

---

7.  Although plaintiffs cite *Levin v. Harleston,* 966 F.2d at 85, in support of their contention that declaratory relief is necessary, the Court finds *Levin* inapposite to the case at bar.  In *Levin,* a college professor sought injunctive and declaratory relief against the defendant university, alleging that the university's reaction to his expression of racially denigrating theories outside the classroom violated his free speech rights.  *Id.* at 88.  While the Second Circuit found that the plaintiff was not entitled to injunctive relief, the court did determine that declaratory relief was appropriate to "clarify the relations between the parties and eliminate the legal uncertainties that

gave rise to" the litigation.  *Id.* at 90.  This case, unlike *Levin,* however, does not involve any continuing relationship between the parties.  Thus, plaintiffs cannot make the required showing that the conduct complained of is "an imminent or even probable event."  *Long Island Lighting Co. v. County of Suffolk, New York,* 604 F.Supp. at 763.

8.  As the Court finds that it lacks jurisdiction to determine plaintiffs' claims for injunctive and declaratory relief, the Court will not consider the merits of plaintiffs' causes of action.