**Morris SCHWIMMER, et al., Plaintiffs,**

v.

**Gregory KALADJIAN, et al., Defendants.**

**No. 92 CIV. 2376(SWK).**

United States District Court,
S.D. New York.

Dec. 9, 1997.

632

Weil, Gotshal & Manges LLP by Joseph Allerand, Laura A. Cooper, Mary Lou Peters, New York, NY, for Plaintiffs.

Paul A. Crotty, Corporation Counsel of the City of New York by Virginia M. Neary, New York, NY, for Defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiffs Morris Schwimmer and Rifka Schwimmer (collectively, the "Schwimmers") bring this action challenging the allegedly unlawful removal of their minor son, plaintiff Yoel Schwimmer ("Yoel"), the allegedly unlawful x-rays taken of Yoel and the non-consensual physical examinations of minor plaintiffs Devorah Schwimmer, Berish Schwimmer, Faiga Dina Schwimmer, David Schwimmer, Yoel Schwimmer and Rachel Yachet Schwimmer (collectively, the "Schwimmer children"). Plaintiffs also challenge the defendants' practices, patterns and policies regarding the removal of children whose parents are suspected of child abuse, and the treatment of those children who have been removed. Defendants Barbara Sabol, Robert Little, Mary Harris and Joseph Guilford (collectively, the "Defendants") move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the reasons set forth below, the Defendants' motion is granted with respect to the federal claims. The remaining counts are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

## BACKGROUND [1]

During the relevant time period, defendant Barbara Sabol ("Sabol") was the Administrator of the New York City Human Resources Administration ("HRA"), charged by law with investigating reports of alleged child abuse within her jurisdiction. Defendant Robert L. Little ("Little") was employed by the HRA as Executive Deputy Commissioner of the Child Welfare Administration ("CWA"). Defendant Mary Harris ("Harris") was employed by HRA as a manager of CWA. Defendant Joseph Guilford ("Guilford") was employed by HRA as a supervisor of CWA. All Defendants are sued in their official capacity, and Guilford is also sued individually.

On June 22, 1991, Yoel, then 27 months old, lost his balance and fell backward down several wooden steps. Mrs. Schwimmer examined Yoel, and observed several bruises on his forehead and cheeks. Upon determining that he did not suffer any serious injury, Mrs. Schwimmer did not seek the services of a doctor.

Subsequently, on June 24, 1991, Mr. Schwimmer took Yoel and two other Schwimmer children to Dr. Gerald Rood, a private physician for treatment of minor ailments. During the examination, Dr. Rood questioned Mr. Schwimmer as to the origins of Yoel's bruises. Mr. Schwimmer's explanation that Yoel had probably received the bruises playing with his older brother and cousins did not satisfy Dr. Rood. Therefore, Dr. Rood informed Mr. Schwimmer that because Yoel had more than three bruises, he was required to report the incident to the New York State Central Registry of Child Abuse and Maltreatment (the "Central Registry"). Pursuant to New York law, the Central Registry summarizes and submits such reports to the agency responsible for investigation on a form known as the DSS–2221 ("the 2221"). *See* N.Y. Soc. Serv. Law § 415 (McKinney 1992). Later that day, two CWA caseworkers visited the Schwimmers' home. The caseworkers noted bruises on Yoel's body but observed no bruises on the other Schwimmer children. The caseworkers recommended that the agency conduct a follow-up visit.

On the morning of June 25, 1991, a CWA employee, Audrey Dragich ("Dragich"), visited the Schwimmers' home and examined the Schwimmer children. Thereafter, she met with her supervisor, Guilford and the Child Protective Manager in charge, Javita Banks ("Banks"). At the meeting, Banks made the determination that all of the Schwimmer children should be medically examined.

At approximately 7:30 p.m., three CWA workers went to the Schwimmer home to effect the medical examination of the Schwimmer children. At approximately 9:00 p.m., officers from the New York City Police Department came to the Schwimmer home at the caseworkers' request. After extensive negotiations, the caseworkers and two police officers escorted Yoel to the Beth Israel Medical Center ("Beth Israel").

At Beth Israel, two sets of x-rays were taken of Yoel, both skull and skeletal series. Thereafter, Yoel was admitted to the hospital. On June 26, 1991, a caseworker took photographs of Yoel. The next day, the family court ordered that Yoel remain in CWA custody and that he be placed with Mr. Schwimmer's brother. The remaining Schwimmer children were paroled into the Schwimmer's custody. The family court also ordered medical examinations of all the Schwimmer children.

On June 28, 1991, two caseworkers went to the Schwimmer home and physically examined the Schwimmer children other than Yoel. After a court hearing on July 1, 1991, Yoel was returned to the Schwimmers' custody. On August 7, 1991, CWA withdrew its petitions in family court, having decided that there was no credible evidence that Yoel was abused or neglected.

The amended complaint alleges thirty-five causes of action, divided into "Constitutional, Statutory and Regulatory Causes of Action"

---

1. Unless otherwise noted, the following facts are taken from the pleadings, the parties Local Rule 3(g) statements, the declaration of Virginia M. Neary in Support of Defendants' Motion for Summary Judgment, sworn to on June 28, 1996, ("Neary Dec."), and the affidavit of Laura A. Cooper in Opposition to Defendants' Motion for Summary Judgment, sworn to on November 8, 1996 ("Cooper Aff.").

(Counts 1 through 12) and "Tort Causes of Action" (Counts 13 through 35).[2] Specifically, plaintiffs allege that the Defendants violated their constitutional rights under the Fourth, Fifth, Ninth and Fourteenth Amendments. The violations were allegedly perpetrated by (1) physically examining the Schwimmer children for evidence of child abuse without either a search warrant, court order, probable cause or a reasonable suspicion that the Schwimmer children were victims of such abuse, and without advising the Schwimmers of their right to refuse these examinations; (2) coercing the Schwimmers to consent to have Yoel x-rayed at the hospital; (3) involuntarily removing Yoel from his home without reasonable cause to believe that he was in "imminent danger;" (4) subjecting Yoel to involuntary medical examinations at the hospital; and (5) failing to provide either adequate training or supervision to workers involved in the investigation of child abuse.

On October 7, 1993, the Court granted defendant Gregory Kaladjian's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).[3] *See Schwimmer v. Kaladjian,* 834 F.Supp. 93 (S.D.N.Y.1993). The Court also dismissed those portions of the plaintiffs' claims seeking injunctive and/or declaratory relief against defendants Sabol, Little, Harris and Guilford. *Id.* Defendants now move, pursuant to Federal Rule of Civil Procedure 56, for summary judgment.

## DISCUSSION

### I. Summary Judgment

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact, which can be done merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). The nonmoving party then must meet a burden of coming forward with "specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial," *id.* at 322, 106 S.Ct. at 2552.

The Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion." *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Hathaway v. Coughlin,* 841 F.2d 48, 50 (2d Cir.1988); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). But the Court is to inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and to grant summary judgment where the nonmovant's evidence is merely colorable, conclusory, speculative or not significantly probative, *id.* at 249–50, 106 S.Ct. at 2510–11; *Knight v. United States Fire Ins. Co.,* 804 F.2d at 12, 15; *Argus Inc. v. Eastman Kodak Co.,* 801 F.2d 38, 45 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987). To determine whether the nonmoving party has met his or her burden, the Court must focus on both the materiality and the genuineness of the factu-

---

**2.** Plaintiffs are no longer pursuing: (1) that portion of the Third cause of action relating to the medical examinations and head x-ray of Yoel; (2) the Fifth cause of action; (3) the Eighth and Ninth causes of action; (4) the Tenth and Eleventh causes of action; (5) the Twenty–Third through Twenty–Sixth causes of action, and (6) the Thirty-first through Thirty-third causes of ac-

tion. *See* Plaintiffs Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Opp. Mem.") at 28 n. 8.

**3.** During the relevant time period, Gregory Kaladjian was Commissioner of the New York State Department of Social Services.

al issues raised by the nonmovant. As to materiality, "it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute over irrelevant or unnecessary facts will not preclude summary judgment, *id.*, but the presence of unresolved factual issues that are material to the outcome of the litigation mandates a denial of the summary judgment motion, *see Knight v. United States Fire Ins. Co.*, 804 F.2d at 11–12.

Once the nonmoving party has successfully met the burden of establishing the existence of a genuine dispute as to an issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy his or her ultimate burden under Rule 56. *See Celotex Corp. v. Catrett*, 477 U.S. at 330 n. 2, 106 S.Ct. at 2556 n. 2 (Brennan, J., dissenting). In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1969)).

## II. Qualified Immunity

█ The Schwimmers seek damages pursuant to 42 U.S.C. § 1983. To recover, they must show (1) "that some person has deprived [them] of a federal right" and (2) "that the person who has deprived [them] of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). As an employee of the City of New York, sued in his individual capacity, Guilford has raised the affirmative defense of qualified immunity to this suit under Section 1983.

█ Issues regarding the qualified immunity of defendants "should be resolved at the earliest possible stage of litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6, 107 S.Ct. 3034, 3042 n. 6, 97 L.Ed.2d 523 (1987); *see Robison v. Via*, 821 F.2d 913, 920 (2d Cir.1987). Qualified immunity shields government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, the doctrine of qualified immunity promotes the "public interest in encouraging the vigorous exercise of official authority" by protecting officials performing discretionary functions. *Id.* at 807, 102 S.Ct. at 2732. The question of whether a public official is entitled to qualified immunity is separate from the merits of the underlying action. *Washington Square Post No. 1212 v. Maduro*, 907 F.2d 1288, 1292 (2d Cir.1990). Summary judgment will be granted with respect to qualified immunity if "it was objectively reasonable for the defendants to make the decision they made, and no rational jury could find that it was not." *van Emrik v. Chemung County Dep't of Social Svcs.*, 911 F.2d 863, 866 (2d Cir.1990). A government official may establish his qualified immunity from liability for violating those rights by, inter alia, showing that it was "objectively reasonable for the officials to believe that their actions did not violate [the plaintiff's] rights." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir.1993). Qualified immunity is available even if officials "of reasonable competence could disagree" that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

### A. Removal

The central issue for summary judgment regarding the qualified immunity of Guilford, who is the only defendant sued in his individual capacity, is whether he can be found to have acted with an unreasonable belief that the removal of Yoel from the Schwimmers' home would not violate the plaintiffs' rights. The Court finds that Guilford is protected by qualified immunity. The question is not whether Guilford pursued the best course of action with respect to the Schwimmer children, but whether it was objectively reasonable for the him to believe that his actions did not violate the plaintiffs' constitutional rights that were clearly established at the

time. *van Emrik v. Chemung County Dep't of Social Servs.*, 911 F.2d at 866. Even drawing all reasonable inferences in the plaintiffs favor, Guilford acted with a reasonable belief that he was not violating the Schwimmers' constitutional rights.

 There is no dispute that the Schwimmers have constitutional rights of both a substantive and procedural nature, affording them protection against arbitrary state action interfering with their parental custody. However, the law of this Circuit is clear that, constitutionally, no prior hearing is required to remove a child from parental custody in an emergency situation. "[O]fficials may temporarily deprive a parent of custody in emergency circumstances without parental consent or a prior court order." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987). To remove a child from his parents' custody, a child must be threatened with immediate harm or be bereft of adequate care or supervision. When officials have been presented with evidence of serious ongoing abuse and therefore have reason to fear imminent recurrence, there is a sufficient emergency to justify taking the child into custody without a warrant or a prior hearing. *Id.* at 922. In this case, Guilford was faced with a situation in which he had reason to suspect that Yoel's injuries were caused by abuse or neglect. He had a physician's report indicating that Yoel may have been abused and his colleague had observed that Yoel's body was covered with a number of bruises. The CWA, acting through Guilford, chose to remove Yoel in order to confirm Dr. Rood's report that the injuries were inconsistent with the explanation given and to rule out the possibility of child abuse.

 Plaintiffs contend that "Mr. Guilford's conduct, lying about having a court order, taking only Yoel and not his siblings, making up the 'mark' on a Schwimmer boy and leaving a blank notice of removal all demonstrate the real reason Mr. Guilford acted the way he did: he had to 'mess with' the Schwimmers." Opp. Mem. at 43. Therefore, plaintiffs believe a "triable issue of fact exists on the basis for Mr. Guilford's decision to remove Yoel from his home." *Id.* The plaintiffs contend that the Court should

consider that the caseworker who visited the night of Dr. Rood's report did not believe the Schwimmer children to be in imminent danger. *Id.* However, the mere fact that no evidence of abuse was discovered at the home on that occasion is not a basis for concluding there was no imminent danger. Given the content of Dr. Rood's 2221 report, child abuse could not be ruled out. *See Chayo v. Kaladjian*, 844 F.Supp. 163, 169 (S.D.N.Y.1994). To remove Yoel, Guilford need only have been presented with evidence of abuse and therefore have reason to fear that danger is imminent. *Robison v. Via*, 821 F.2d at 922.

 Guilford's statements are not inconsistent with this standard. Furthermore, the Court agrees with Judge Peter K. Leisure, that in general, "caseworkers may seek to defuse the confrontation inherent in their difficult task by characterizing their efforts to parents more as an attempt to investigate a report than to confirm a personal belief in the parent's guilt." *Chayo v. Kaladjian*, 844 F.Supp. at 169. Therefore, the Court finds that Dr. Rood's report and Guilford's later observations are more significant than the alleged statements of caseworkers to the Schwimmers. Although the plaintiffs have raised a question with respect to Guilford's motives for removing Yoel, the crucial factor is the objective legal reasonableness of Guilford's actions rather than his subjective state of mind. *Chayo v. Kaladjian*, 844 F.Supp. at 169. Given that Guilford's conduct in removing Yoel was objectively reasonable, the Court must grant Guilford qualified immunity for his actions.

 With the benefit of hindsight, the fact that there may not have been ongoing abuse of the Schwimmer children is not a basis to deny Guilford qualified immunity. If it were, a comparable official in the same circumstances might refrain from acting to protect a child who is at risk for fear of liability. Thus, the possibility that there was no abuse must give way to the protection of the child where there is an objectively reasonable belief that constitutional rights are not being violated. *See Doe v. Connecticut*

*Dep't of Children & Youth Svcs.*, 712 F.Supp. 277, 286 (D.Conn.1989).

Because no reasonable juror could find that it was objectively unreasonable for Guilford to have acted as he did in removing Yoel for the purposes of a medical examination in the belief that he may have been subject to ongoing abuse, Guilford is entitled to qualified immunity with respect to this claim.

## B. X-Rays

 The Constitution assures parents that, in the absence of parental consent, x-rays of their child may not be undertaken for investigative purposes at the behest of state officials unless a judicial officer has determined, upon notice to the parents and an opportunity to be heard, that grounds for such an examination exist and that the administration of the procedure is reasonable under all circumstances. *van Emrik v. Chemung County Dep't of Social Svcs.*, 911 F.2d at 867. However, medically necessary x-rays may be taken without judicial approval or parental consent if "medically indicated." *Id.; Chayo v. Kaladjian,* 844 F.Supp. at 169. On the other hand, x-rays initiated by or at the behest of government officials will generally exceed the scope of constitutional activity.

In *van Emrik,* an emergency department physician was originally opposed to an x-ray examination of a child who officials suspected had been abused. Only after the investigative rationale of the x-rays was explained to him by the officials did he agree to order the x-rays. *van Emrik v. Chemung County Dep't of Social Svcs.*, 911 F.2d at 867. The Second Circuit Court of Appeals found that the x-rays of the child violated the constitutional rights of the plaintiff because they were "initiated" by and carried out "at the behest" of the government official. *Id.*

 The analogy of Yoel's situation to the child in *van Emrik* is inappropriate. Contrary to plaintiffs' assertions, the record is devoid of evidence that Guilford directed Beth Israel to take skeletal x-rays of Yoel for investigatory purposes and that the x-rays were "not medically necessary or advisable." Opp. Mem. at 34–5. Accordingly, no reason-

able juror could return a verdict in plaintiffs' favor.

### 1. Stoller Affidavit

Defendants have submitted the affidavit of Marc Stoller, M.D., the attending physician on duty on June 25, 1991 when Yoel was brought to the emergency medicine department of Beth Israel. Affidavit of Marc Stoller, M.D., sworn to on June 4, 1997, attached to Neary Aff. as Exhibit Q ("June 4 Stoller Aff."). Dr. Stoller states that on June 25, 1991 Yoel had "multiple ecchymotic lesions, at different stages of healing on various parts of his body including, his right forehead, left forehead, the bridge of his nose, his right cheek, his left arm, elbow and forearm, his left shoulder, his left back and his right and left thighs, that were suspicious of child abuse." *Id.* ¶ 4. Furthermore, the x-rays, "both the skull and skeletal survey were medically necessary and advisable for the diagnosis and treatment of the symptoms and signs presented by Yoel Schwimmer." *Id.* ¶ 7.

Plaintiffs have moved to strike the June 4 Stoller Aff. for failure to meet the requirements of Federal Rule of Civil Procedure 56(e). Rule 56(e) requires that affidavits in support of summary judgment motion "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Specifically, plaintiffs argue that the June 4 Stoller Aff. (1) was not based on personal knowledge; (2) is inadmissible as an expert affidavit; and (3) is impermissible as an opinion on the ultimate fact at issue.

 Dr. Stoller's testimony is based on his review of Beth Israel's medical records. Thus, he has personal knowledge of the contents of the records. His affidavit, based on the review of those records, is sufficient to meet the personal knowledge requirement of Rule 56(e). The fact that Dr. Stoller may not, at some point after making the affidavit, have been able to recall the content of the records or remember seeing Yoel does not impeach his affidavit testimony or disqualify it from consideration under Rule 56(e).

Plaintiffs rely on Dr. Stoller's statement in a subsequent affidavit, that he does not have personal knowledge of Yoel's condition, treatment or diagnosis. Affidavit of Marc Stoller, M.D., sworn to on July 2, 1997. As an initial matter, the Court must disregard Dr. Stoller's legal conclusion regarding his lack of personal knowledge. *United States Small Bus. Admin. v. Citibank, N.A.*, No. 94 Civ. 4259(PKL), 1997 WL 45514, at *2 (S.D.N.Y. Feb. 4, 1997). Personal knowledge does not necessarily require direct, first-hand knowledge of the events in question. *See United States v. Stratton*, 779 F.2d 820, 829 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986). As stated above, on June 25, 1991, Dr. Stoller was the attending physician on the night in question. He was one of the physicians who attended to Yoel and ordered the skeletal x-rays. *Id.* Dr. Stoller's position as the supervising physician responsible for care and treatment of Yoel and his testimony that he was one of the physicians who attended to Yoel is sufficient to consider his belief that the skeletal x-rays were medically necessary, under the personal knowledge requirement of Rule 56(e).

For the same reasons, Dr. Stoller's affidavit is not an improper expert affidavit. Dr. Stoller does not offer testimony about his expert medical opinion. Rather he offers his belief regarding the medical necessity of skeletal x-rays of Yoel on June 25, 1991. Whether Dr. Stoller or his staff was wrong in their belief regarding the medical necessity of the x-rays is irrelevant to the constitutionality of the x-rays.

Plaintiffs' final effort to strike the June 4 Stoller Aff. relies on the notion that an affiant may not offer an opinion on ultimate facts, namely whether the x-rays were taken at Guilford's request and whether Mrs. Schwimmer's consent to the x-rays was coerced and ineffective for investigatory x-rays.[4] Opp. Mem. at 8. However, in his affidavit, Dr. Stoller expresses no opinion regarding Mrs. Schwimmer's consent or the role of Guilford in ordering the x-rays.

### 2. Investigatory Purposes

In an effort to demonstrate that the x-rays of Yoel were taken for investigatory purposes, plaintiffs offer Mr. Schwimmer's deposition testimony that a Beth Israel doctor did not believe that skeletal x-rays were medically necessary. Deposition of Morris Schwimmer, taken July 7, 1995, attached to Cooper Aff. as Exh. "9," at 94–5. Based on the affidavit of Police Officer Donald Conway, stating that Guilford wanted skeletal x-rays, plaintiffs argue that there is a disputed issue of fact regarding whether Guilford requested or ordered a second set of x-rays. *See* Affidavit of Donald Conway, sworn to on July 25, 1996, ¶ 14.

Whether or not Guilford wanted the skeletal x-rays, or even asked for them is insignificant, so long as they were medically indicated. *van Emrik v. Chemung County Dep't of Social Servs.*, 911 F.2d at 867. The plaintiffs have failed to put forth any evidence demonstrating that the x-rays were taken for any reason other than that the physicians treating Yoel believed that they were medically indicated. The Court is not concerned with the medical judgment of the physicians at Beth Israel. Rather, the issue before the Court is whether government officials improperly influenced the physicians to take x-rays of Yoel Schwimmer that were not medically indicated. There is no evidence indicating such improper influence. To find that Guilford's wishes or desires regarding x-rays, even if expressed to the physicians at Beth Israel, meet the standard of the terms "imitated" and "at the behest of" would be to stretch the meaning of those terms too far. *See e.g., Chayo v. Kaladjian*, 844 F.Supp. at 170 ("The terms 'initiate' and 'at the behest of' . . . could only comprise the state officials' actions if the Court gave these terms an unusually broad construction."). In fact, one would expect that the officials wanted Yoel

---

4. In support of their motion to strike, plaintiffs submit the affidavit of Dr. Chandu Patel, who examined Yoel on June 27, 1991. The Court finds Dr. Patel's testimony irrelevant to the constitutionality of the x-rays administered to Yoel. The fact that physicians may disagree about the medical necessity of the x-rays administered to Yoel does not bear on the constitutionality of the x-rays. The relevant issue is whether the x-rays were ordered for medical as opposed to solely investigatory purposes. Dr. Patel has not provided any testimony bearing on this issue.

Schwimmer to be x-rayed, for that is the very reason they required him to be taken to the hospital. Even viewing the evidence in a light most favorable to the plaintiffs, they have not met their burden of coming forward with evidence that the decision to x-ray Yoel was initiated by or made at the behest of Guilford.

Accordingly, the Court finds that drawing all reasonable inferences in favor of the plaintiffs, the x-rays could not be shown to have been taken at the behest of Guilford. Therefore, the plaintiffs' constitutional rights were not violated by the skeletal x-rays of Yoel.

## III. Municipal Claims

■ Defendants Sabol, Little, Harris and Guilford move for summary judgment on the plaintiffs' suit for money damages against them in their official capacities. The claims under Section 1983 against Sabol, Little, Harris and Guilford in their official capacities are, in reality, claims against the City of New York. *See Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). An individual municipal employee sued in his or her official capacity is liable for damages when the violation of a plaintiff's constitutional rights resulted from a municipal policy or custom, such that its policies are the "moving force" behind the constitutional violation. *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981); *Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993). To prevail against these municipal defendants, the plaintiffs must allege a specific policy or custom of the City of New York which deprived the plaintiffs of a federal constitutional right. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Such deprivation has occurred if the plaintiffs have been deprived of an interest encompassed by the Fourteenth Amendment's protection of liberty and property, and such deprivation has occurred without due process of law. *Duchesne v. Sugarman,* 566 F.2d 817, 824 (2d Cir.1977).

### A. Home Entry

■ On June 25, 1991 Dragich went to the Schwimmer home, identified herself as a CWA employee and entered the home. Plaintiffs contend that Dragich's entry to the Schwimmer home was unconstitutional. Plaintiffs rely on the fact that "Rifka Schwimmer did not know that she had any choice to refuse Ms. Dragich's entry" to survive summary judgment. Opp. Mem. at 9. This bald assertion is insufficient to create a triable issue of fact with respect to the constitutionality of Dragich's entrance.

■ Knowledge of the right to refuse consent is not a necessary prerequisite to voluntary consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 232, 93 S.Ct. 2041, 2050, 36 L.Ed.2d 854 (1973); *United States v. Garcia,* 56 F.3d 418, 423 (2d Cir.1995). Such lack of awareness is germane only if it resulted in a consent to entry that was "the product of duress or coercion," *Schneckloth v. Bustamonte,* 412 U.S. at 227, 93 S.Ct. at 2047 and as a result, the official did not have a reasonable basis for believing that there had been consent to the search, *United States v. Garcia,* 56 F.3d at 423. Plaintiffs have failed to produce evidence that Dragich had an unreasonable belief that Mrs. Schwimmer consented to Dragich's entrance into her home on June 25, 1991.

■ Plaintiffs' assert, without support, that Mrs. Schwimmer consented only in response to Dragich's assertion of authority. *See* Opp. Mem. at 9, 53. In general, valid consent is a question of fact to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte,* 412 U.S. at 277, 93 S.Ct. at 2073. However, in this case the assertion of authority is the fact that Dragich introduced herself to Mrs. Schwimmer as "Ms. Dragich from BCW." Deposition of Rifka Schwimmer, attached to Cooper Aff. as Exh. "10," at 31. Plaintiffs have failed to put forth any further evidence of coercion, or evidence that Mrs. Schwimmer's consent was given only in response to Dragich's alleged assertion of authority. Therefore, plaintiffs have failed to raise an issue of fact with respect to Mrs. Schwimmer's consent and no reasonable juror could find in their favor. *See, e.g., Darryl H. v. Coler,* 585 F.Supp. 383, 388 (N.D.Ill.1984) (granting summary judgment for caseworker where parents not in-

formed of right to refuse and not other factors indicating coercion present), *vacated in part on other grounds*, 801 F.2d 893 (7th Cir.1986). Furthermore, even if the plaintiffs could show a constitutional violation, they have failed to meet the requirement of alleging a specific custom or policy that resulted in Dragich's allegedly unlawful entrance and the deprivation of a protected right.

### B. Removal and X–Rays

 Plaintiffs have an undisputed liberty interest in not being separated as a family and in being free from medical examination without consent. *See van Emrik v. Chemung County Dep't of Social Servs.*, 911 F.2d at 865. However, the removal and examination of Yoel were not effected without due process of law. Even in the absence of parental consent or a judicial order, children may be temporarily removed from their parents' custody without violating due process, when the removal is taken as an emergency measure to protect the children's interest. *See Robison v. Via*, 821 F.2d at 922. Furthermore, x-rays of child may be taken of children who have been removed without parental consent if they are for medical, rather than investigative purposes. *See van Emrik v. Chemung County Dep't of Social Servs.*, 911 F.2d at 867; *Chayo v. Kaladjian*, 844 F.Supp. at 169. As explained extensively above, the Defendants had sufficient reason to believe that Yoel might be in imminent danger as a result of ongoing child abuse. The steps they took in light of the information available to them and the risk of danger to the Schwimmer children were reasonable. Consequently, the plaintiffs were not deprived of due process by this temporary removal or by the x-rays of Yoel. *See Dietz v. Damas*, 932 F.Supp. 431, 448 (E.D.N.Y.1996); *Chayo v. Kaladjian*, 844 F.Supp. at 169.

### C. Photographs

 The Fourth Amendment protects a child's legitimate expectation of privacy and personal security from unreasonable governmental searches. *See New Jersey v. T.L.O.*, 469 U.S. 325, 336–38, 105 S.Ct. 733, 739–41,

83 L.Ed.2d 720 (1985). The protection of certain liberty interests belonging to a child survive state custody of that child. *See De-Shaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 200, 109 S.Ct. 998, 1006 (1989); *Marisol A. v. Giuliani*, 929 F.Supp. 662, 676 (S.D.N.Y.1996). Furthermore, nude physical examination is a significant intrusion into a child's privacy. *See Darryl H. v. Coler*, 801 F.2d 893, 901 (7th Cir.1986); *Bellnier v. Lund*, 438 F.Supp. 47, 53 (N.D.N.Y. 1977). Thus, "[t]he state may not, consistent with the prohibition of unreasonable searches and seizures found in the Fourth and Fourteenth Amendments, conduct a ... strip search of a person's body in the absence of consent, a valid search warrant, or exigent circumstances." *Good v. Dauphin County Social Servs. for Children and Youth*, 891 F.2d 1087, 1092 (3d Cir.1989).

On the afternoon of June 26, 1991, after Yoel had been removed from his parents' custody, Neville Clayton ("Clayton"), a CWA employee assigned to the Schwimmer case went to Beth Israel for the purpose of photographing Yoel so that the pictures could be shown to the family court. After having a nurse's aide undress Yoel, and without the consent of Yoel's parents or a warrant signed by a court, Clayton spent approximately one hour photographing Yoel.[5] Deposition of Neville Clayton, attached to Cooper Aff. as Exh. "2", at 118–19, 146. At the time Clayton took Yoel's photographs, Beth Israel had already taken two sets of photographs of Yoel's injuries.

 A municipality and its agencies may not be held liable under a respondeat superior theory, but may be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs.*, 436 U.S. at 694, 98 S.Ct. at 2037; *Walker v. City of New York*, 974 F.2d 293, 294 (2d Cir.1992), *cert. denied*, 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993). Municipal liability under Section 1983 may attach to a single decision of a municipal official only when "the

**5.** The photographs are not presently before the Court. However, plaintiffs assert that the photographs include "closeups of various private parts of Yoel's body." Opp. Mem. at 21.

decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). A single incident, especially one involving only actors below the policy making level, generally will not suffice to raise an inference of the existence of a custom or policy. *Dwares v. City of New York,* 985 F.2d at 100. To find the Defendants liable in their official capacities for violations of Section 1983, plaintiffs must demonstrate that the violation of constitutional rights resulted from a municipal policy or custom. *Dwares v. City of New York,* 985 F.2d at 100.

■ Here, plaintiffs challenge the following CWA policy:

> In all cases where a child is removed, a physical examination must have been given before placement. (When an immediate placement in a kinship home is made, a supervisor and/or the field office nurse should be consulted to arrange for a medical examination.) That examination should be sufficient to establish whether or not the child has communicable diseases, is in need of immediate medical or psychiatric care or further evaluation, and whether any special physical needs are to be considered in placing the child. The examination may also establish evidence of abuse or neglect.

Child Protective Services Field Operations Manual of the Child Welfare Administration, City of New York, attached to Cooper Aff. as Exh. "23," at Ch. 7, p. 1. Assuming that this policy was in effect in June 1991[6], it is clearly constitutional on its face, and as applied in this case. Defendants have an affirmative obligation to provide custodial plaintiffs with adequate food, shelter, clothing, medical care, and reasonable safety. *See DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. at 200, 109 S.Ct. at 1005–06; *see e.g., Marisol A. v. Giuliani,* 929 F.Supp. at 676 (City of New York has an affirmative obligation to provide children in their custody with, inter alia, adequate medi-

cal care). *Wilder v. City of New York,* 568 F.Supp. 1132, 1137 (E.D.N.Y.1983) (child who is ward of the City has a liberty interest in minimally adequate care and treatment); *Brooks v. Richardson,* 478 F.Supp. 793, 795 (S.D.N.Y.1979) (a child in the custody of the state and placed in foster care has a constitutional right to humane custodial care). Plaintiffs have failed to show how this policy resulted in the unconstitutional disrobing and photographing of Yoel by Clayton on June 25, 1991. In other words, plaintiffs have not offered a link between the alleged constitutional violation by Clayton and a specific municipal policy, as required to state a claim against the Defendants in their official capacities under Section 1983.

■ In addition, plaintiffs' claim that CWA maintains a policy of taking pictures of children who had been removed from parental custody is insufficient. Opp. Mem. at 60 citing Deposition of Terry Lynn Weiss, July 21, 1995, attached to Cooper Aff. as Exh. "13," at 219–20. This allegation is based on the testimony of CWA employee, Terry Lynn Weiss. As a matter of law, such testimony fails to establish a CWA policy of disrobing and photographing children who are suspected of being abused by their parents. Because the constitutional infirmity of Clayton's action specifically involves the disrobing and subsequent photographing of Yoel, the plaintiffs must show a custom or policy directing CWA caseworkers to disrobe and photograph children suspected of being abused. They have failed to do so. Because of the important difference between direct and vicarious liability, plaintiffs must allege a direct causal connection between municipal conduct and the constitutional deprivation. *See Oklahoma City v. Tuttle,* 471 U.S. at 824–25 n. 8, 105 S.Ct. at 2436–37 n. 8. Thus, while the Court does not necessarily approve of Clayton's actions, plaintiffs have produced no factual support for the claim that municipal liability can be attributed to some policy or widespread and persistent practice violative of their constitutional rights.

---

**6.** There is a disputed issue of fact as to whether this policy was in effect in June 1991. The plaintiffs seem to be unsure whether this policy was in effect, arguing both that the CWA did not have an operations manual in June 1991 and that the policy was in effect at that time.

### D. Examination of Schwimmer Children

On June 27, 1991, the family court ordered medical examinations of the Schwimmer children. *See In re Schwimmer Children,* Transcript of June 27, 1991 Conference before Judge Phoebe K. Greenbaum, Family Court of New York, Kings County, part 7, attached to Cooper Aff. as Exh. "25," at 5. On June 28, 1991 Clayton told Mr. Schwimmer that medical examinations were unnecessary and that Clayton and another CWA worker would conduct the examination. Later that day, over the objection of Mr. Schwimmer, Clayton examined Berish and David, while a female caseworker examined Rachel and Faiga. The children were undressed during the examination.

 Even assuming that Clayton's actions with regard to the examination of the Schwimmer children were in violation of their constitutional rights, summary judgment is appropriate for the Defendants, because plaintiffs have not pointed to a CWA custom or policy that would allow the Court to hold the Defendants liable. A municipality's agency may not be held liable under a respondeat superior theory. Liability is only appropriate "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs.,* 436 U.S. at 694, 98 S.Ct. at 2037–38; *see Walker v. City of New York,* 974 F.2d at 294 (2d Cir.1992). The plaintiffs have neither alleged nor shown that the CWA followed a policy of disregarding court orders directing medical examinations in favor of examination by its own caseworkers.

### E. Failure to Train

 Three requirements must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. *Walker v. City of New York,* 974 F.2d at 297. First, the plaintiff must show that a policymaker knows "to a moral certainty" that his employees will confront a given situation. Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Such a situation is one in which "more than the application of common sense is required [or] where, although the proper course is clear, the employee has powerful incentives to make the wrong choice ." *Id.* Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989). Thus, municipal policymakers may appropriately concentrate training and supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights. Liability exists only if it is "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*

 The plaintiffs have made a general allegation that the CWA failed to train its employees and that Guilford's employment history rendered him unqualified for his position. Plaintiffs' allegations and evidence do not meet the standard for a claim based on a municipality's failure to train its employees.

### F. General Complaints

Plaintiffs also criticize the CWA for, inter alia, "the disjointed CWA policies regarding when CWA can cause a medical procedure or examination of a child"; the failure to establish new policies after the Second Circuit's decision in *van Emrik v. Chemung County Dep't of Social Servs.;* the CWA policy directing caseworkers to obtain police assistance; and the lax enforcement of CWA policies in effect at the time Yoel was removed. Opp. Mem. at 57–61. The Court has examined these criticisms carefully and found that none of them rise to the level of a constitutional violation redressable in this Court. Plaintiffs have failed to meet the standard, set forth extensively above, for holding the Defendants liable in their official capacities. Accordingly, the Section 1983 claims of the plaintiffs against defendants Sabol, Little,

Harris and Guilford in their official capacities are dismissed pursuant to Rule 56(b).

## IV. Remaining Claims

The Court may dismiss the action without considering plaintiffs' pendent state law claims because all claims over which the Court has original jurisdiction have been dismissed. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Strong v. Board of Educ. of Uniondale Union Free Sch. Dist.,* 902 F.2d 208, 213 (2d Cir.1990), *cert. denied,* 498 U.S. 897, 111 S.Ct. 250, 112 L.Ed.2d 208 (1990); 28 U.S.C. § 1367(c)(3). Thus, because the Court has dismissed all of the claims over which it has federal subject matter jurisdiction, the pendent state claims are dismissed pursuant to Section 1367(c)(3).

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) is granted with respect to all federal claims. Furthermore, plaintiffs' state law claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

SO ORDERED.